UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Maritza L., | ) |
|     Plaintiff, | ) No. 22-cv-6376 |
| v. | ) Magistrate Judge Keri L. Holleb Hotaling |
| MARTIN J. O'MALLEY, Commissioner of the Social Security Administration, | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Maritza L.[1] appeals the denial of her application for disability benefits by the Commissioner of the Social Security Administration ("Commissioner"). For the reasons set forth below, Plaintiff's motion for summary judgment (Dkt. 15)[2] is GRANTED; Defendant's motion for summary judgment (Dkt. 16) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

### I. BACKGROUND

#### A. Procedural History

On April 7, 2020, Plaintiff filed an application for disability insurance benefits ("DIB"), alleging a disability onset of October 15, 2019. (R. 338-42.) Her application was denied initially and upon reconsideration. (R. 160-75, 177-99.) Following a telephonic Administrative Hearing and a Supplemental Administrative Hearing at which a Medical Expert ("ME") and Vocational Expert ("VE") testified, an Administrative Law Judge ("ALJ") issued a November 3, 2021 decision that Plaintiff was not disabled. (R. 17-31.) On September 19, 2022, the Appeals Council

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

[2] The Court construes Plaintiff's Memorandum in Support of Motion for Summary Judgment (Dkt. 15) as a motion for summary judgment.

denied Plaintiff's request for review (R. 1-4), rendering the ALJ's decision the final decision of the Commissioner, reviewable by the district court. 42 U.S.C. § 405(g); *see* 20 C.F.R. § 404.981. On November 15, 2022, Plaintiff filed this lawsuit seeking review of the adverse decision (Dkt. 1), which is now before this Court for review. (*See* Dkt. 19.)

B.         **Social Security Regulations and Standard of Review**

Pursuant to the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1). To determine whether a claimant is disabled, an ALJ must apply a sequential five-step test. *See* 20 C.F.R. § 404.1520(a).

Judicial review of the ALJ's decision is confined to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Mandrell v. Kijakazi*, 25 F.4th 514, 515-16 (7th Cir. 2022) (citations omitted); *see also* 42 U.S.C. § 405(g). The Court does not supplant the ALJ's findings with the Court's assessment of the evidence or credibility, *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022), but the Court must "review the entire record," *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020), and remand where the opinion does not permit a meaningful review, *Martinez v. Kijakazi*, 71 F.4th 1076, 1080 (7th Cir. 2023). The ALJ "need not specifically address every piece of evidence but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023).

C.         **The ALJ's Decision**

In the November 3, 2021 decision, the ALJ followed the standard five-step sequential process for determining disability. (R. 17-31.) At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 15, 2019. (R. 19.) At Step 2, the ALJ found Plaintiff had severe impairments of: migraine headaches; postural orthostatic tachycardia

syndrome ("POTS");[3] status post vascular insult to the brain;[4] and depression/anxiety, borderline personality disorder, and history of alcoholism. (R. 19-22.) At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 20-22.)

Before Step 4, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") "to perform sedentary work as defined in 20 CFR 404.1567(a) except no balancing . . .; no exposure to unprotected heights and dangerous moving machinery or bright and strobing lights and loud noises (requires that lighting and noise levels be at office setting standards)." (R. 22.) The ALJ further found that Plaintiff "is able to understand remember and carry out simple job instructions in a routine work setting with few if any changes," could "tolerate occasional interaction with coworkers and supervisors" so long as there were no "collaborative joint projects" or public interface, and "must not have a fast paced job with mandatory numerically strict hourly production quotas" although she could "satisfy end of the day employer expectations." (*Id*.) At Step 4, the ALJ found Plaintiff would not be able to perform past relevant work. (R. 29.) At Step 5, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff would be able to perform. (R. 29-30.) The ALJ found Plaintiff not disabled. (*Id*.)

---

[3] "POTS is a disorder of the autonomic nervous system which causes a very fast heart rate (tachycardia). The main distinguishing symptoms of POTS are a rapid increase in heartbeat, fainting, dizziness, and fatigue." *Kimberly W. v. Kijakazi*, No. 20-cv-50055, 2022 WL 220305, at *1 (N.D. Ill. Jan. 25, 2022) (citation omitted); *Postural Orthostatic Tachycardia Syndrome (POTS)*, Johns Hopkins Med., https://www.hopkinsmedicine.org/health/conditions-and-diseases/postural-orthostatic-tachycardia-syndrome-pots) (noting a common symptom of POTS is a "[a] heart rate increase from horizontal to standing") (last visited Apr. 19, 2024).

[4] A "[v]ascular insult to the brain (cerebrum, cerebellum, or brainstem), commonly referred to as a stroke or cerebrovascular accident (CVA), is brain cell death caused by an interruption of blood flow within or leading to the brain, or by a hemorrhage from ruptured blood vessel or aneurysm in the brain." Listing 11.04I.1., 20 C.F.R. Part 404, Subpt. P, App. 1. Plaintiff had a stroke and pulmonary embolism in 2016 (R. 114, 122), before the alleged onset of her disability.

**II.    ANALYSIS**

Plaintiff challenges the ALJ's decision as lacking a logical bridge between the record evidence as to Plaintiff's symptoms (particularly fatigue, difficulty focusing and brain fog, although the Court focuses on fatigue) and the ALJ's apparent rejection of the severity of those symptoms. (Dkt. 15 at 11-12.) The Court agrees.

"When assessing a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations." *Charles B. v. Saul*, Case No. 19-cv-1980, 2020 WL 6134986, at *6 (N.D. Ill. Oct. 19, 2020) (citing 20 C.F.R. § 404.1529(c); 20 C.F.R. § 416.929(c); SSR 16-3p, 2017 WL 5180304, at *5, *7-8 (Oct. 25, 2017)). "[A] remand may be warranted [where] the ALJ fails to adequately explain [the] subjective symptom analysis 'by discussing specific reasons supported by the record.'" *Sameria B. v. Saul*, No. 19-cv-4664, 2020 WL 4015333, at *3 (N.D. Ill. July 16, 2020).

Here, the ALJ thoroughly recounted Plaintiff's relevant medical history, listing the medical conditions found to be severe, and detailing at least ten medical consultations in which Plaintiff variously described severe and continuing fatigue, including exhaustion, excessive sleeping (including daytime sleepiness, sleeping up to forty-two hours continuously, sleeping two days straight every two weeks, and sleeping twelve to fourteen hours a day including naps), mental fogginess, and poor concentration. (R. 23-28; *see* R. 366 (stating she is "[u]nable to stay awake").) The ALJ also related Plaintiff's neurologists' diagnoses of "excessive daytime sleepiness," "post-stroke fatigue," and "intractable fatigue" (R. 27, 28), and noted Plaintiff reported taking stimulants to try to stay awake. (R. 23). Plaintiff consistently testified that, upon waking in the morning, she takes a stimulant, stays awake two hours or so before she is "already napping" for a few hours,

4

consumes another stimulant upon waking, is awake three hours or so, then goes to bed. (R. 116, 129-30.) If she forgoes stimulants, she might sleep twenty-four or more hours straight. (R. 129-30.)

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained." (R. 23.) The ALJ, though, barely mentioned Plaintiff's fatigue after listing the symptom reports and diagnoses and never stated how or why he believed her repeated descriptions of those symptoms were inconsistent either with each other or with other evidence. The ALJ expressly rejected only one bit of evidence related to fatigue: Plaintiff's hematologist concluded in "insurance paperwork" that Plaintiff was "not cleared to work," and the ALJ discounted that opinion because the hematologist appeared to have based his statement on Plaintiff's "subjective complaints" about feeling too fatigued to work.[5] (R. 29.)

Although the Commissioner acknowledges a finding without explanation or support cannot stand, he defends the ALJ's analysis regarding fatigue by relying upon the ALJ's vague reference to Plaintiff's overall "routine and conservative" treatment and the general concept that "many symptoms" showed improvement. (Dkt. 17 at 12-13.) But these defenses do not aid the Court in tracing the ALJ's reasoning in disregarding Plaintiff's description of her fatigue symptoms. Although the ALJ gave a reason for slighting Plaintiff's hematologist's refusal to clear Plaintiff to return to work, this does not explain why the ALJ did not accept Plaintiff's own repeated reports of her symptoms. The ALJ did not, for example, note anything that is inconsistent with Plaintiff's description of her sleeping patterns or fatigue. Nor did the ALJ explain what other less "routine" treatment—beyond the stimulants Plaintiff already was taking to try to stay awake—might have

---

[5]   Even the ME, though, testified that he diagnoses fatigue when "[p]atients tell me they have fatigue. It's a symptom that they can only feel. I cannot feel fatigue." (R. 71.) *See also Berz v. Saul*, No. 19-cv-225-WMC, 2020 WL 2214370, at *7 (W.D. Wis. May 7, 2020) (citing circuit law and concluding that "an 'ALJ may not disregard subjective complaints merely because they are not fully supported by objective medical evidence.'") (quoting *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995)).

resolved Plaintiff's fatigue, if indeed that is the reason for the ALJ's rejection of her description of her symptoms (which is not clear).

"An ALJ may not ignore a claimant's testimony about . . . fatigue[,]" *Sherman v. O'Malley*, No. 23-1428, 2023 WL 8868065, at *2-3 (7th Cir. Dec. 22, 2023), and, if a claimant has "documented issues with fatigue, the ALJ [i]s required to fulsomely discuss the claimant's fatigue and how it might affect her job performance." *See Rebecca A. v. Kijakazi*, No. 21-cv-3185, 2022 WL 16856394, at *3 (N.D. Ill. Nov. 10, 2022) (citation omitted; cleaned up). "Merely acknowledging Plaintiff's fatigue without analysis is insufficient." *Id*. (collecting cases). Because the ALJ recounted the numerous instances in which Plaintiff reported fatigue and excessive sleepiness or sleeping, did not explain what symptoms he found were supported (although he seems to have found some were unsupported), and then continued to an RFC that did not expressly account for Plaintiff's described symptoms, the Court is left unable to follow the ALJ's reasoning. *See id.*; *Allen v. Astrue*, No. 06-cv-4660, 2008 6600481, at *12 (N.D. Ill. Nov. 13, 2008) ("Despite these numerous references [to fatigue], it is unclear if, or to what extent, [the] ALJ [] considered [plaintiff's] fatigue"); *see also Charles B.*, 2020 WL 6134986, at *6 (noting that subjective symptom evaluation must allow determination of whether ALJ reached that decision in a rational manner, logically based on the ALJ's "specific findings and the evidence in the record").

Perhaps the ALJ intended the RFC, which includes sedentary work with postural, environmental, and mental restrictions, to accommodate Plaintiff's fatigue. But, where an ALJ "discredit[s] the plaintiff's claims about fatigue" without making "specific determinations about [her] fatigue, like, for example, how frequently she napped," the court cannot "trace how the plaintiff's symptoms of fatigue [might have been] accommodated by [the included] limitations." *Monika B. v. Saul*, No. 20-cv-638, 2020 WL 7626685, at *6 (N.D. Ill. Dec. 22, 2020); *see also Kenneth P. v. Saul*, No. 18-cv-3346, 2019 WL 4958245, at *7 (N.D. Ill. Oct. 8, 2019) ("The ALJ

6

additionally failed to explain how sedentary limitations could accommodate [plaintiff's] issues with balance and fatigue[.]"); *Lopez v. Berryhill*, 340 F. Supp. 3d 696, 701 (N.D. Ill. 2018) ("[T]he ALJ seemed to accept that [claimant] suffered fatigue and sleepiness during the day because she said that her residual functional capacity finding was 'sufficient to address claims of fatigue[,]'" but "[o]ne can only guess why that is.").

The Court also cannot say that the ALJ's subjective symptoms analysis regarding fatigue was necessarily harmless because, after identifying jobs that a person with Plaintiff's RFC, age, experience, and education might do, the VE testified "tolerance for absenteeism is going to be one occurrence of unexcused absences within one month," and "more occurrences . . . within a one-month period in a competitive work environment would be work preclusive." (R. 98.) That includes late arrivals or early departures from work. (*Id*.) Further, the VE testified that taking three or four fifteen-minute breaks in a day would be work preclusive. (R. 99.) It is impossible to tell whether Plaintiff's fatigue symptoms, as credited by the ALJ, might require unexcused absences or breaks that are beyond the tolerances of a competitive work environment. *See Hildebrand v. Saul*, No. 2:17-cv-108-JPK, 2021 WL 1085605, at *6 (N.D. Ind. Mar. 22, 2021) (noting that, where plaintiff testified without dispute she needed to sleep during the day and vocational expert testified that off-task time could preclude full-time work, ALJ needed to address that on remand); *Allen*, 2008 WL 6600481, at *12 ("On remand, the ALJ must discuss how [plaintiff's] fatigue affects his ability to work.").

The foregoing should not be construed as an indication the Court believes Plaintiff is disabled or should be awarded benefits. The Court leaves those issues—as well as the other issues Plaintiff raised in this appeal—to be determined by the Commissioner after further proceedings.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (Dkt. 15) is granted, and the Commissioner's motion (Dkt. 16) is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

ENTERED: May 2, 2024

_____
Hon. Keri L. Holleb Hotaling
United States Magistrate Judge